MARVIN MINCE v. THE STATE.

No. 7670. Decided June 6, 1923.

1.—Selling Intoxicating Liquor—Sufficiency of the Evidence.

Where, upon trial of selling intoxicating liquor, the evidence was sufficient to sustain the conviction, there was no reversible error, under a proper

charge of the court, and the court was not in error in refusing the requested charge.

**2.—Same—Accomplice—Statutes Construed—Purchaser.**

The statute at the time of the offense was committed expressly declared that the purchaser was not an accomplice.

**3.—Same—Evidence—Acts of Third Parties.**

There was no error in receiving and refusing to exclude the testimony touching the conduct of the parties after they received the whisky, to show its intoxicating character.

**4.—Same—Evidence—Flight.**

The evidence of flight or circumstances tending to show flight were properly received in evidence, and to show that the sheriff could not find members of the party involved.

**5.—Same—Evidence—Supporting Testimony.**

Where defendant had testified that he had no whisky at his home and had no connection with the sale of it, there was no error in admitting testimony of a deputy sheriff that he went to defendant's place to arrest him and found certain fruit jars, some of which contained whisky.

Appeal from the District Court of Floyd. Tried before the Honorable R. C. Joiner.

Appeal from a conviction of selling intoxicating liquor; penalty, one and one-half years imprisonment in the penitentiary.

The opinion states the case.

W. W. *Kirk* for appellant.—Cited, cases in opinion.

R. G. *Storey*, Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for the unlawful sale of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of one and one-half years.

A party of young men and women were together. One of them, Fred Wimberly, wrote a check for three dollars and gave it to Ocie Husky, who, together with one of the girls, went in an automobile after some whisky. They went to the home of the appellant, which was on a ranch. Husky told the appellant he wanted to buy some whisky. Although appellant had retired for the night, he got up and put on his clothes and went across the prairie about a mile. Quoting Husky, he said:

"It was dark. I had a check that Fred Wimberly gave me for $3.00 and gave it to the defendant for whisky. I got a quart of whisky from him for this $3.00 check, I guess; that is what it was supposed to be. I handed the check to the defendant. He put the whisky in the car for the $3.00."

There was testimony showing that the parties drank the whisky, and while there was a controversy on the subject. the evidence is sufficient to show that the liquor obtained was intoxicating. Several of the parties testified to facts showing this. The girls, it seems, were of ill-repute. Husky, when recalled by appellant, testified that when he mentioned the purchase of the whisky, appellant said he did not have any liquor, but that some might be obtained at the headquarters from a man named Webb Roberts. The witness handed the check to appellant and asked him to drive the car to the place where the whisky could be obtained. This appellant did. The witness sat down in the car with a quilt over him and did not know where they were driving and did not see what took place. He did not know that the car stopped until he heard appellant talking to someone. He found the whisky in the car but did not know who put it there. He said on cross-examination that he gave a check to the appellant to get some whisky, and the appellant said he did not have it but could get it, and he did get it. The witness could not say who put it in the car; that he did not handle it until he had gone some distance.

Appellant's version is this: He told Husky he had no whisky, and in reply Husky inquired about where some could be obtained. He informed Husky that it might be gotten at the headquarters. Appellant, at the request of Husky and for his accommodation, drove the car to the headquarters on the ranch and went to Webb Roberts and obtained the whisky. He handed him the check which Wimberly had executed and which named no payee. Roberts put the whisky in the car.

Roberts was not living upon the ranch at the time of appellant's trial, and his whereabouts was unknown. According to appellant, he at the request of Roberts, exchanged the check with Wimberly for money which was given to Roberts. Appellant left the ranch in search of work, first going to Electra and later to Oklahoma.

There was found upon appellant's premises when the officers went to arrest him some fruit jars, one of which contained a small quantity of whisky. Three or four weeks later appellant was arrested in the creek country of Oklahoma.

The opinion is expressed that the evidence is sufficient to support the finding of the jury that the appellant was interested in the sale of the liquor and that the liquor was whisky.

In support of his proposition that Husky's testimony is contradictory and does not support the conviction, appellant cites Bland v. State, 92 Texas Crim. Rep., 636, 244 S. W. Rep., 1023; Cramer v. State, 63 Texas Crim. Rep., 226, 246 S. W. Rep., 380; Bell v. State, 93 Texas Crim. Rep., 292, 247 S. W. Rep., 284; Key v. State, 38 S. W. Rep., 773; Cortinas v. State, 93 Texas Crim. Rep., 52, 245 S. W. Rep., 911. The position is not, in our opinion, sustained.

The jury was instructed in appropriate language that if appellant was acting as an accommodation agent for Husky they would acquit, or if upon that subject they had a reasonable doubt, they would do likewise. Additional special charges upon this subject are not necessary. The court was not in error in refusing to give them.

Granting that Wimberly was interested in the purchase, he was not an accomplice. The statute at the time the offense was committed expressly so declared. See Acts of 37th Leg., 1st Called Session, Chap. 61, Sec; 2c.

There was no error in receiving and refusing to exclude the testimoney touching the conduct of the party after they received the whisky. This is described by the witness Dillingham. From her testimony, it appears that they were boisterous, and profane, and some of the men and women went to bed together; that one of them vomited. Without further detail, we are of the opinion that the evidence was admissible as bearing upon the effect that the liquor obtained had upon those who drank it. This was an issue with reference to its intoxicating character. The court, in qualifying the bill complaining of the refusal to exclude this testimony, used this language:

"The testimony showed after getting what was called whisky all the parties stopped at the Owens House and were cutting up and 'squalling' and one vomiting, and the matter complained of in the bill is to part of the general conduct after drinking what was termed whisky. It was for the jury to pass upon the conduct of the girls in pulling 'all' of their clothes off and acting as they did as to whether they were affected by drinking and on question as to whether the whisky was intoxicating."

The evidence of flight or circumstances tending to show flight were properly received.

Complaint is made of the proof by the deputy sheriff that he was unable to subpoena the witnesses Guin, Weaver, and Felton, who were members of the party on the night that the offense is charged to have been committed for the reason that he could not find them. We see no impropriety in the State thus explaining the absence of these eye-witnesses.

Complaint is made of the fact that after the departure of appellant from his home, the deputy sheriff went to his place for the purpose of arresting him and found certain fruit jars, some of which contained whisky. In our opinion, this testimony was relevant upon the issue presented by appellant in his testimony to the effect that he had no whisky at his home and had no connection with the sale of it.

The State's witness did not know or specifically claim that he knew where the whisky was obtained. He only knew that appellant got in an automobile and drove it while the witness sat in the car,

covered up with a quilt, in company with one of the girls. Appellant claims that the whisky was obtained from Roberts. On this issue, the circumstances showing that there was whisky at appellant's house, we think was not irrelevant. The evidence showed that at the time the officer went to appellant's house, there were indications that he had not been gone long; that the clock was still running; and there was other evidence of the habitation having been recently occupied.

The judgment is affirmed.

*Affirmed.*